Our next case for argument is 22-2086, Great Northern Properties v. United States. Mr. Adams, please proceed. Thank you, Your Honors, and may it please the Court, I'm Chad Adams. I'm here with my partner, Steve Wade, and also Kai Shaw from Great Northern Properties, the President and CEO of that company. We're asking the Court today to reverse the order and judgment of the Court of Federal Claims that dismissed Great Northern's takings complaint. While the issues are addressed in the briefing and a number of reasons to reverse and to remand the case exist there, I want to focus on a few of the arguments that were made. The first is a procedural one. This Court, in 1985, issued its first decision in the Whitney Benefits case. I think the Whitney Benefits case is probably the most important precedent for the Court to review in considering this appeal. Except they had nothing to do with whether it was state action or federal action. I think, Your Honor, a close reading of the initial Whitney Benefits decision shows a template or a pattern of what needs to be pled to survive dismissal. The facts in that case were very similar to what we have here. The facts in that case were that the State of Wyoming made the decision to deny the permit that Whitney Benefits sought in that case. It was pursuant to a federally approved state program that came out after the Surface Mine Act was in effect. That's the same issue that we have here, where Montana enacted a state-run program. We found that the denial of the permit was mandated by the statute. Correct. The implementation of the AVF regulations and the impossibility of obtaining a permit are mandated by the same statute in Great Northern's case. Without the enactment of the Surface Mining Control and Reclamation Act, Great Northern would have been able to mine this. There wouldn't have been the alluvial value floor regulations in place. Looking at the Whitney Benefits decision, it's to set forth the template or the pattern that we followed in filing this complaint. I think this Court emphasized in the 1985 Whitney Benefits decision repeatedly the general rule that it's difficult in a rare case where dismissal would be appropriate in a takings complaint because of the factual nature of those claims. We're here to ask the Court for remand so we have the opportunity to go back to do discovery and to present those facts, the same that Whitney Benefits was able to do in their case. I think really reviewing the first Whitney Benefits decision and comparing it to the facts that we've made in this case, I think it's an impossibility to reconcile those two decisions. Didn't Whitney Benefits involve federal action? I mean, this is state action. Whitney Benefits involved the same action that took place here. Whitney Benefits relied on the fact that the statute, when it was enacted, mandated the denial of this particular permit. So I think if you read both of the Whitney Benefits decisions together, it shows that there was a finding that the reason the permit was denied was because implementation of the Alluvia Valley Floor Regulations. That is the reason Whitney Benefits was not able to operate. The same reason that Great Northern has not been able to operate in Montana. There's no discussion in that case about state versus federal action, right? I think, well, in the facts in the initial Whitney Benefits decision, there is discussion of that. And it discusses that it was the state of Wyoming that the permit application went to. But there was no argument in that case that it was state action rather than federal action. And that question wasn't addressed or resolved by the case, right? I think the court just realized that... Well, the answer is yes. It did discuss that issue. It didn't report to resolve that issue, right? It didn't directly address it. I think the court assumed and the government assumed at the time that it was what was obvious. It was the federal statute and the implementation of the federal regulations are what... Did any of the parties argue it? Was it argued? It wasn't argued, right? I don't believe that it was. I guess I thought that it was the enactment of the SMCRA that was alleged to be the taking in the Whitney Benefits case. So they did discuss that, but they also said that either the enactment is when the taking would have took place or some subsequent event. I mean, even in page 1172, footnote number 4 in the Whitney Benefits case, it said Whitney didn't even need to apply for a state permit. That wasn't even necessary for their taking's claim. So it can't be the state action in the Whitney Benefits case if the application of the permit wasn't even a necessary component of the taking allegation. Well, the only reason that they didn't need to apply for the permit was because, according to the Service Mining Act, obtaining a permit is an impossibility if the ABF determination is made that there's an ABFC with a significant impact on agriculture. Otherwise, there would have been no reason that they wouldn't have been able to obtain a permit. Well, moving on, how is this case different from B&G? From B&G? Mm-hmm. So we set forth a number of reasons in our briefing, which included that in B&G it was optional for the state to apply the regulations related to vending machines, right? There was no option for the state of Montana here. They didn't have to enact the statute. They could have not acted, and then the feds would have stepped in. Well, yeah, that's the result. So in B&G, that wasn't what would happen. The feds wouldn't have stepped in and done anything. In B&G, it was Congress using a carrot, right, and saying, if you enact these regulations or if you enact a statutory program, you'll be rewarded with some benefit, with money in that case. Here, that's not what would happen. This is a way more coercive statute where either the state of Montana adopts its own program that's sort of its own program. It's really overseen and controlled by the federal government. No question about that from smack-to-tone language. But it's not an incentive approach. It's one that says either the state can do this and cooperate with the federal government on some of these issues, or the federal government will step in and do it, whether you like that or not. That's the main difference between this issue and the B&G case. And the extent of the control that the federal government has in this is much worse. As far as in B&G, there was prior state regulation permitting requirement, right? Yeah. Yes. In B&G? Here. There was prior state legislation requiring permits. There was very recent prior state regulation. No, no, before the federal statute was enacted. Yeah, very recently before the federal statute was enacted, there was permit regulation, but it did not include the AVF regulations. It did not include other issues that were adopted at the same time because of the enactment. And when Montana changed and adopted the new statute, they said this is similar to the federal. Our approach has been similar to the federal approach. And, in fact, the federal approach has adopted some of the features of our approach, right? That's sort of what they said. And what they wanted to make very clear and did in the legislative history and also in very recent Montana Supreme Court case, Westmoreland, was that Montana was adopting its changes in 1979 only to adopt the very minimum regulations required by the federal SMACRA Act. And they did not want to extend further than that. They haven't extended beyond that. Their AVF regulations are identical to what the federal act requires, and they've been adamant about that. And I think an important thing for the court to consider, right, with the adoption of the changes that took place in 1979, and what's discussed in Whitney Benefits at length, is the compensation part of the statute, right? You usually come to a takings complaint and you have to look at all these facts and decide, you know, did a taking take place? This court in Whitney Benefits said in SMACRA in 30 U.S.C. 1260b-5, that the exchange provision made that analysis of whether a taking occurred much easier because it goes beyond regulation, and what the court uses is a language that goes too far. And the language in that compensation statute is that the federal government would acquire the coal, private fee coal that's no longer able to be mined because of the AVF regulations. So when the Montana court, or when the Montana legislature made these additional changes after SMACRA, they also adopted the same compensation provision that shows what compensation should take place when these takings occur, and they adopted the federal statute. It doesn't say Montana will pay a coal owner. It says it will be certified to the department secretary of the Department of Interior that this person would be eligible, this owner would be eligible for compensation under SMACRA, under the exchange provision there. And it's important to understand the federal government would not allow this program to go forward without its approval. They looked at, reviewed, had input in, and approved the Montana statute and approved that language. And so when the state of Montana made these AVF determinations and the DEQ issued its AVF determinations, those were sent to the secretary, and there was no response back that said, no, we won't pay for these, or no, they're not eligible for the exchange program. Right? And so statutorily, the federal government in SMACRA, and also with its express approval of the Montana program, the adoption of the Montana program. But you're not pretending that the enactment of either the federal statute or the regulations was a taking. That would be time borne. You're arguing that this particular ruling by the Montana authorities applying state law was a taking, and there's been no approval or federal role in making that particular determination, right? So we are arguing that the implementation of those regulations resulted in a taking, not the enactment of the statute. It's the decision denying the permit here, right? So here there was actually no decision denying a permit. There was two decisions made that said there's an AVF with significant impact on agriculture, and therefore you're precluded from mining this coal. So it would be futile for us to ask for a permit. Kind of the same argument that Winnie Benefits ended up making. Do you want to take your remaining time for rebuttal? I will, thank you. Very good. Ms. Blaha? Blaha, got it. Ms. Blaha, please proceed. Good morning. May it please the Court. Amber Blaha for the United States. Great Northern's takings claim fails because it does not allege a single action taken by the United States in the last 40 years relating to their property. Instead, it seeks to hold the United States liable for a decision made by the Montana Department of Environmental Quality exclusively under Montana law. So I'd like to address first the lack of any federal action. I'm happy to address any questions about the other alternative grounds that the Court could use to uphold the dismissal of the case as well. So it's axiomatic that in order for this Court to have jurisdiction or to state a claim under the Tucker Act, Great Northern needs to allege some specific action taken by the United States that took their property. The only action taken by the United States alleged in the complaint is the passage of SMACRA 46 years ago. I think the best evidence of the action they do allege that took their property is the alluvial floor determination that's in the appendix. And I think that document is really the best evidence of how there was no federal involvement in the key decision that they sent to their property. They have and can't challenge the enactment of the statute, right? Correct. That's all time barred, so they can't make that challenge. Exactly. And in Whitney 2, am I correct in saying that the challenge, the taking challenge there was to the enactment of the statute? That claim, yes, I think so. And I think this is in Whitney 1. It's very clear that the plaintiff there was alleging a legislative taking. That claim, the case of Whitney Benefits, was brought within six years of the passage of SMACRA. And both of those cases were really all about whether it was SMACRA itself that took Whitney Benefits' property. The government, I believe, in that case... I'm sorry. Because Congress considered this particular situation in enacting the statute. Congress considered Whitney Benefits' property. There was evidence in this court in Whitney Benefits 2 relied very heavily on the fact that there was extensive evidence in the legislative history that Congress knew that the alluvial valley floor provision was going to directly affect Whitney Benefits' property. And so over the government's objections, actually, this court found that the statute itself in 1977 affected a taking of Whitney Benefits' property. It's very different here. We're 40 years down the road. There's no evidence. Nobody's pointed to any evidence that Congress knew specifically about certainly Great Northern's property. It's not clear. I don't think they even owned the property at the time of the passage of SMACRA. So on that basis alone, that was a key holding. I think the court used the term... A key element of the case that SMACRA itself precluded mining in terms known to be applicable to the AVF overlying the Whitney Coal property. And it's a huge distinction. And it gave that court the federal action and thus jurisdiction and thus a cause of action. It's not present here. I was also speaking about the AVF determination itself. And that is... There's not a single mention of federal law in it. It relies exclusively on Montana law. It relies on Montana regulations. While there is a lot of similarity between the Montana law and the federal standard, there are also some differences, particularly in Montana's regulations, implementing the alluvial valley floor provision. They have their own requirements in place for what is required to be submitted as part of the application. It's a very fact-specific determination. Again, I commend the court that document. It's involved interviews with neighboring ranchers and there's an analysis of the geology. It's both a technical evaluation and I think a judgment of the effects that the potential essentially dewatering of that watershed would have on those neighboring ranches. And there's no allegation, no evidence, no indication anywhere that there was any federal role in any of this. And so there's just simply no federal action that they pointed to in the complaint or really in any subsequent briefing. I will turn briefly... They brought up and I think you raised the B&G case and sort of the issue of agency or coercion. I think that's absolutely absent here. Agency requires control. There's no indication that the federal government has control over Montana's actions. Again, the ABF determination itself I think is good evidence of this. While there is federal oversight, it is not the same as control. It is a backstop program that does not give the Office of Surface Mining, any federal agency, the ability to go in and redo ABF determinations. It didn't approve or review or direct in any way the ABF determination that was made here. So agency, I think there's just no allegation agency existed. I think also counsel puts too much weight on the exchange provision that's found in the statute. I'd note at the outset that was an argument not made below and so we believe it was forfeited. But even if this court were to consider it, that exchange provision is I think best seen as a potential benefit for persons who were impacted by the statute. And it's specifically described in the statute as part of a policy of Congress. It's not described as compensation. It's not monetary. It is just an opportunity to arrange an exchange with the federal government. So I don't think it is dispositive here. And I should add, it certainly doesn't excuse the requirement for federal action. So even if it was relevant in the Whitney Benefits discussion because the court found that Congress itself with the passage of SMACRA had taken Whitney Benefits property, I don't think it can't create jurisdiction or a claim here. Anything further? Does the court have any questions on the alternative grounds for affirming? If not, I will. Okay. Thank you, Ms. Blaha. Thank you. Mr. Adams, you have the bubble time. Thank you, Your Honors. I want to address a couple of issues of what the federal government did. Initially, there's no question that it was the federal government that imposed the AVF regulations that Montana had to comply with. Second, although it was represented that the federal government doesn't retain control, SMACRA requires the federal government to maintain not only control over permitting decisions and implementation of the SMACRA regulations, even under the Montana program, but ultimate control over those decisions. It requires them to be reviewed by the Office of Surface Mining and for that office to come in and to take over the program if Montana is not complying with it. There really is no more... Take over the program but not change the individual decision. They would absolutely have to change the decision that was made and to reverse those decisions. No, no, but the statute provides the feds can come in and take over the program. It doesn't provide for reversing the individual decision, right? I believe that it does. What it says is not only if Montana is not complying with the state-authorized program, but if Montana is not implementing the SMACRA regulations, then they come in required to... Where does the statute say they can change the individual decision? I believe that's 30 U.S.C. 1270 and 1271. The result of those would be that they have to come in, review those decisions, correct any of the mistaken decisions, and to take over that program if the state's not going to comply. Beyond that, the federal government determines who the regulatory authority is that would implement SMACRA, whether it would be the federal government or the state. They could reject Montana's program in total if they didn't agree with anything that was in or not in the statute. Importantly, it does say in the alluvial valley floor determinations, it does cite specifically to federal law and cites to SMACRA and cites to the exchange provisions. I think that is important because, as it says in Whitney Benefits, that shows that a taking took place and a taking that needs to be compensated, where the federal government is going to acquire the property. The federal government agreed to this in the Montana statute and says if these regulations are put into effect and coal owners precluded from mining, they'll be able to recover not under any Montana statute or against the state of Montana, but through the exchange program, which Whitney Benefits said is one option or a takings complaint against the United States. Finally, I noticed on the way in, in the lobby, a book that was called Should Uncle Sam Pay? When and Why? The answer to those questions are yes, Uncle Sam should pay, and when is as soon as possible, and why is because for the same reasons that this court had addressed in the Whitney Benefits decisions and the facts of the case. Thank you.